KANT SLIP FEDERAL CREDIT UNION, INC., APPELLANT, *v.* DUDLEY, ADMR., BUREAU OF UNEMPLOYMENT COMPENSATION, APPELLEE.*

[Cite as Kant Slip Federal Credit Union v. Dudley, Admr., 9 Ohio Misc. 123.]

(No. 219934—Decided January 25, 1965.)

*Mr. Claude E. Clark* and *Mr. Clifford G. Niemeyer*, for appellant.

*Mr. William B. Saxbe*, attorney general, and *Mr. Bernard L. Hefferman*, for appellee.

LEACH, J. On June 6, 1962, the Bureau of Unemployment Compensation made a determination that Kant Slip Federal Credit Union (hereafter referred to as Credit Union) was an employer of three or more persons and thus liable for contributions "due on wages paid" to such employees. Application for

---

*Judgment reversed by Court of Appeals (6 Ohio App. 2d 31), which judgment was reversed by the Supreme Court and that of the Common Pleas Court affirmed for the reasons stated in the Common Pleas Court opinion. 9 Ohio St. 2d 135.

review and redetermination was made in proper time on the basis of the claim that the alleged employees were not employees of Credit Union but, in fact, were employees of Standard Register Company. Hearing was had before a deputy administrator on April 5, 1963, and full and complete testimony and evidence taken. By decision of March 12, 1964, the Administrator of the Bureau of Unemployment Compensation affirmed the prior determination, concluding that the individuals in question "were in the employment of the Credit Union."

An appeal was then taken to this court, and this case was submitted on the merits upon the transcript and the briefs and argument of counsel.

Prior to October 20, 1963, Section 4141.26, Revised Code, provided for an appeal in this type of case directly from the decision of the administrator on redetermination to the Common Pleas Court of Franklin County, such appeal being predicated upon the transcript of the record taken before the administrator. Effective October 20, 1963, Section 4141.26, Revised Code, was amended to provide for an appeal from the decision of the administrator on reconsideration to the Board of Review and thence from the Board of Review to the Court of Common Pleas of Franklin County. Under the statute as amended, the appeal is predicated upon a transcript made before the Board of Review.

Although the appeal herein was taken subsequent to this amendment, no issue has been raised by appellee as to the right of this court to determine this case on the merits. Presumably, counsel for appellee recognized the applicability of Section 1.20, Revised Code, which provides that, when a statute is repealed or amended, such repeal or amendment does not affect pending proceedings. In this case there was a pending proceeding before the administrator at the time of the amendment of the statute, the complete hearing having been had but no decision yet rendered and, as noted before, under Section 4141.26, Revised Code, prior to such amendment the appeal was made on a transcript of a record taken before the administrator. In any event, we conclude that we do have jurisdiction to entertain this appeal in spite of the amendment of the statute.

We turn now to a consideration of the merits hereof. Here

the single issue is whether the individuals in question, admittedly "employees" of either Credit Union *or* Standard Register, were employees of Credit Union within the purview of the Unemployment Compensation Law of the state of Ohio.

Credit Union was organized in 1936 under the Federal Credit Union Act with its membership, right to make deposits, and right to borrow money, being limited to employees of Standard Register Company of Dayton, Ohio. Standard Register is engaged in the printing business, having approximately 2,600 employees.

Credit Union has a board of directors, officers and a credit committee which passes on loan applications. Its day-to-day administrative details are handled by four persons, one denominated as "manager" and the others performing clerical and administrative functions under his supervision. These are the employees in question.

All these employees were hired by Standard Register, are paid by Standard Register and, in accordance with an agreement between Standard Register and Credit Union, are assigned by Standard Register to perform duties for Credit Union. Standard Register has always paid all taxes, including income tax withhholding, Social Security, Unemployment Compensation, and Workmen's Compensation, on the salaries of such persons.

Credit Union from its inception has been aided by Standard Register in many ways. At first a single employee of Standard Register was assigned part time to handle daily administrative details of Credit Union. Space in the plant was accorded Credit Union. Agreement was made for payroll deductions of employees to repay their loans from Credit Union. Then, as Credit Union grew, an informal agreement was made by which additional employees of Standard Register were assigned full time to Credit Union work, Credit Union agreeing to reimburse Standard Register for its payment of the gross salaries of such persons. Later such agreement was formalized by written agreement. No specific agreement exists for payment to Standard Register for the use of office space, heat, light, etc., but Credit Union recently customarily has made a payment to Standard Register, in addition to reimbursement of salaries paid, in the sum of $1,500 to $2,000 per year.

The evidence discloses that those employees, later assigned to Credit Union work, were hired by Standard Register and their wages were fixed by Standard Register, all wages in Standard Register being classified into 19 pay scales. One of the four employees was assigned to Credit Union work immediately after she was hired. The other three, after being originally hired, were first assigned to and worked on Standard Register business and were later assigned to Credit Union work.

While under the agreement Credit Union, in effect, may veto the assignment of a particular employee to its work, it is clear that after such assignment Standard Register itself may re-assign any such person to other work and that this may be done without seeking or obtaining the consent of Credit Union. It also is clear that only Standard Register may terminate the employment contract which it made with such employee.

The employees assigned to Credit Union work are subject to the same rules and regulations and have the same rights under their contracts of hire as do all employees of Standard Register not so assigned. The rights and benefits so provided include seniority in time of service, retirement pension, company-paid hospitalization, use of recreational facilities, including swimming pool, etc.

Upon the basis of the evidence herein, we conclude that the Administrator of the Bureau of Unemployment Compensation was in error in including that such personnel are employees of Credit Union within the purview of the Unemployment Compensation Act. "Employment" is defined by Section 4141.01 (B), Revised Code, as meaning "service performed for wages under any contract of hire, written or oral, express or implied."

As is true of other contracts, the basic determination of the relation of master and servant or employer and employee is made by a consideration of whether there is a "meeting of the minds." 35 Ohio Jurisprudence 2d 629; 35 American Jurisprudence 451.

Exceptions to this general rule do exist where from considerations of public policy a contract may be said to be "implied in law" despite the intention of the parties thereof to the contrary. In this case, however, no such consideration of

public policy exists in view of the fact that the employees in question are fully covered under the Unemployment Compensation Act and receive other benefits under their contract of employment with Standard Register far in excess of those to which they would be limited if an employment contract with Credit Union were "implied in law" despite the rather obvious intention of the parties to the contrary.

By virtue of their employment contract with Standard Register, the employees in question have agreed, not only to perform work for the benefit of Credit Union if so assigned by Standard Register and accepted by Credit Union, but also to accept any other assignment by Standard Register within the proper scope of their abilities. In return, Standard Register has agreed to pay to these employees a specific wage and has also agreed to provide to these employees the "fringe benefits" by way of retirement, seniority in service, hospitalization, use of recreational facilities, etc. From the evidence it appears clear that this is the intention of the respective contracting parties, that is, Standard Register on the one hand and the employees in question on the other hand. Such not only is the intention of Standard Register and such employees, but is also the intention of Credit Union.

On behalf of the administrator, however, it is asserted that since the daily work being done by these employees is for the benefit of Credit Union, it, and not Standard Register, has the right to control the "mode and manner" of such work and that such is "the primary test" of whether an employer-employee relationship exists. While this may be the "primary test" in the consideration of whether a relationship is that of master-servant or independent contractor under the tort principle of *respondeat superior*, regardless of "intent" of the parties, it does not follow that such test may be used under the Unemployment Compensation Law to create a "contract" that does not exist or to dissolve one that does exist. The Unemployment Compensation Law contemplates a *contract* for the payment of wages, and thus the "primary test" would appear to be the "intent" of the parties unless contrary to public policy.

Under the "loaned servant" doctrine a general employer may loan or assign his employee to another to do work for and under the direction of the latter and, under certain factual situa-

tions arising thereunder, the latter, under the principle of *respondeat superior*, may become liable for the act of the employee. 35 Ohio Jurisprudence 2d 623. Under such a factual situation, however, the obligation of the general employer to pay the wages to such employee continues, and the general relationship of employer-employee between the general employer and the employee continues.

In our opinion, a distinction must be made herein between the right of Standard Register to hire or fire one of its employees and the right of Credit Union to veto an *assignment* of such employee to Credit Union work. Only Standard Register may completely terminate the employment contract and then place such employee in the category of "unemployed."

It also is asserted on behalf of the administrator that the arrangement or agreement between Standard Register and Credit Union would be in violation of the charters of the two corporations. We find nothing in the articles of incorporation of Standard Register which would forbid such an agreement. While, obviously, Credit Union is authorized to employ personnel, we also find nothing in its charter which would prohibit an arrangement or agreement such as has been made here. Furthermore, the determination of this issue would appear to be a matter of determination by the federal authority which chartered Credit Union, and would not appear to be a basis of creating contracts by "implication of law" where such do not exist within the intendment of the parties.

Apparently the question herein arose because of the fact that under federal law prior to January 1, 1962, employees of Federal Credit Unions were specifically exempted from the definition of employment under the Social Security Act. The amendment of such law, however, does not and could not have the effect of changing the employment status of employees from one corporation to another, independent of their contract. While the change of the law now requires unemployment compensation coverage of employees of Federal Credit Unions, if they have the requisite number of employees, it does not mean that employees of Standard Register are thereby transferred to the status of employees of Credit Union merely because the work assigned to them by Standard Register is for the benefit of Credit Union.

Parenthetically, it might be noted that these same employees are considered employees of Standard Register by the federal government for the purpose of the Social Security tax for the payment of old age benefits, and by the state of Ohio for the purpose of paying the required premiums for Workmen's Compensation.

For the reasons heretofore stated, the order of the Administrator of the Bureau of Unemployment Compensation, here appealed from, is reversed.

*Order reversed.*