CHACO CREDIT UNION, INC., APPELLANT AND CROSS-APPELLEE, *v.* STEINBACHER, ADMR., OHIO BUREAU OF EMPLOYMENT SERVICES, APPELLEE AND CROSS-APPELLANT.

(No. 88AP-46—Decided
October 25, 1988.)

*Vorys, Sater, Seymour & Pease, Robert A. Minor* and *Jonathan R. Vaughn,* for appellant and cross-appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Sharon D. Tassie,* for appellee and cross-appellant.

WHITESIDE, P.J. Both Chaco Credit Union ("Chaco") and the Administrator of the Ohio Bureau of Employment Services ("administrator") appeal from a judgment of the Franklin County Court of Common Pleas. Chaco raises the following assignment of error:

"The trial court erred in finding Chaco Credit Union to be an 'employer' for purposes of the Ohio Unemployment Compensation Act effective January 28, 1986."

In addition, although not specifically stated in its assignment of error, Chaco contends and argues extensively in its brief that it was unreasonable and unlawful for the administrator to apply the maximum rate even if it be the employer. The administrator raises the following cross-assignment of error:

"The lower court erred in refusing to permit the retroactive assessment of employer's contribution rates to the appellant-appellee, Chaco Credit Union.

"A. Chaco Credit Union was properly determined to be an employer subject to the procisions [*sic*] of R.C. 4141.01 *et seq.* from April 1, 1981.

"B. The retroactive assessment of tax liability is within the statutory power of the Administrator, Ohio Bureau of Employment Services."

Although not precisely stated, Chaco also raises the issue of whether the maximum rate should be applied even if it, rather than Champion International ("Champion"), is the employer. The decision of the Unemployment Compensation Board of Review ("board") includes the following findings of fact:

"Chaco Credit Union, Inc., the appellant herein, * * * is a state-chartered credit union which was established for the employees of Champion International.

"* * * The appellant has approximately thirty-five individuals performing services at a facility that it owns located at 601 Park Avenue, Hamilton, Ohio. The appellant has full authority to hire and discharge all individuals who perform services for the appellant. The appellant determines what rate of pay each of the individual workers is to receive and uses as a guideline a salary guideline established by Champion International. Vacations are allotted to the individual workers based upon a vacation schedule established by Champion International. The appellant is not bound by either the wage guideline or vacation schedule guideline and has the authority to assign any rate of pay or vacation schedule [it deems] proper. Some of the workers for the appellant were previously employees of Champion International and some of the individuals were secured from the general public. When an individual is hired to perform services for the appellant, they are [*sic*] sent to a facility of Champion International to receive a physical examination. It is the practice of the appellant not to hire any individual who would not pass such a physical. The appellant is not required to have the individuals take such a physical but does so out of the past practice. All those individuals who perform services at the appellant's facility are bonded by the appellant and the appellant carries liability insurance on all of such individuals. The appellant does not have a direct

payroll. The checks issued to the appellant's workers are issued by Champion Internation [*sic*]. Champion International also contributes withholding tax, unemployment tax, workmen's compensation tax and health and benefit costs on behalf of the individuals who perform services for the appellant.

"Each month the appellant receives a bill from Champion International for the monies it has distributed both in wages and tax payments for the appellant's workers.

"Champion International does not control the day-to-day operations of the appellant or any of the individuals who perform services for the appellant. When a personnel action is taken by the appellant, whether it be a new hire, promotion, wage increase, or discharge, the appellant notifies Champion International of such action so that Champion International can properly adjust the payroll for that individual.

"* * *

"In March of 1985, a field auditor for the Ohio Bureau of Employment Services made a field audit of the payroll records of Champion International and contacted representatives of the appellant. The April 1985 audit was the first information received by the Ohio Bureau of Employment Services concerning the relationship between the appellant and the individuals who had been performing services for the appellant.[1]

"During all of the time the appellant was operating as a credit union,

Champion International reported the appellant's workers as employees of Champion International to the Ohio Bureau of Employment Services and paid taxes on those individuals. No differentiation was ever made from the individuals who performed services directly for Champion International and the individuals who performed services for the appellant. Prior to March of 1985, the appellant did not file a report to determine liability or any quarterly contribution reports with the Ohio Bureau of Employment Services.

"Champion International does not have any authority to assign a worker to the appellant or to remove an individual who is performing services for the appellant."

Following the 1985 field audit, the Ohio Bureau of Employment Services ("OBES") issued an Employer's Liability and Contribution Rate Determination. That determination found Chaco to be liable as an employer effective April 1, 1981 and imposed the maximum contribution rates for the years 1983 through 1985. Upon appeal, the board affirmed the determination. Chaco appealed to the Franklin County Court of Common Pleas, which found Chaco to be an employer, but only after the date of the board's decision, *i.e.,* January 28, 1986. Otherwise, the board's decision was affirmed.

Chaco contends that it is not the employer but, instead, Champion is the employer. Therefore, Chaco contends that Champion, not it, is liable for the unemployment compensation payments. The initial issue is whether

---

[1] This finding is incorrect and unsupported by the evidence. The record includes a field audit prepared by the Ohio Bureau of Employment Services in *1979* which specifically states:

"The mere fact the Champion International Corporation prepares and issues pay checks to Chaco Credit Union, Inc.

employees does not mean the employees involved are automatically employees of Champion International Corporation."

The field audit also specifically states that there was a "payroll problem." Therefore, it is inaccurate to state that the 1985 audit was the "first information."

Chaco is an employer and thus liable for delinquent unemployment tax. R.C. 4141.01(A) defines "employer" as follows:

"(A)(1) 'Employer' means the state, its instrumentalities, its political subdivisions and their instrumentalities, and any individual or type of organization including any partnership, association, trust, estate, joint-stock company, insurance company, or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee, or the successor thereof, or the legal representative of a deceased person who subsequent to December 31, 1971, or in the case of political subdivisions or their instrumentalities, subsequent to December 31, 1973:

"(a) Had in employment at least one individual, or in the case of a nonprofit organization, subsequent to December 31, 1973, had not less than four individuals in employment for some portion of a day in each of twenty different calendar weeks, in either the current or the preceding calendar year whether or not the same individual was in employment in each such day; or

"(b) Except for a nonprofit organization, had paid for service in employment wages of fifteen hundred dollars or more in any calendar quarter in either the current or preceding calendar year * * *[.]"

Chaco relies on the analysis of that statute set forth in *Kant Slip Federal Credit Union, Inc.* v. *Dudley* (1965), 9 Ohio Misc. 123, 38 O.O. 2d 237, 223 N.E. 2d 912, which was adopted by the Ohio Supreme Court in *Kant Slip Federal Credit Union, Inc.* v. *Dudley* (1967), 9 Ohio St. 2d 135, 38 O.O. 2d 328, 224 N.E. 2d 341. While it is true that the *Kant* case is similar to this case, the board of review, in its decision, distinguished this case from *Kant* based upon factual distinctions. Since the board's decision was supported by reliable, substantial and probative evidence, the trial court did not abuse its discretion in affirming that finding.

In the *Kant* case, the plaintiff was a credit union established for the benefit of the employees of the Standard Register Company ("Standard"). Standard hired all of the workers for the credit union, and then assigned them to work at the credit union. The wages were fixed by Standard and fully paid by Standard. In addition, Standard paid all the taxes associated with those wages, including the unemployment tax. Most importantly, it was determined that Standard had complete control of the individuals who worked at the credit union. In this respect, the trial court stated: "* * * Only Standard Register may completely terminate the employment contract and then place such employee in the category of 'unemployed.' " *Id.* at 128, 38 O.O. 2d at 240, 223 N.E. 2d at 917. Because control of the workers was vested with Standard, the court held them to be employees of Standard, not the credit union.

The board found the facts of this case to be substantially different from the facts in *Kant*. The credit union in *Kant* had no authority to discharge employees of Standard, but the board found that Chaco has not only the right to hire and fire its workers, but also to fix the terms of employment, including compensation and benefits. As a result, the board found a relationship of employer-employee to exist between Chaco and its workers.

The trial court concluded that the board's determination was supported by reliable, probative and substantial evidence. Our review is limited to a determination of whether the trial court abused its discretion in making such finding. *Angelkovski* v. *Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159, 11 OBR 242, 463 N.E. 2d 1280. As this court stated in *Angelkovski,*

"* * * 'abuse of discretion' connotes more than an error of judgment; it implies a decision without a reasonable basis, one which is clearly wrong." *Id.* at 161-162, 11 OBR at 244, 463 N.E. 2d at 1283. It was reasonable for the trial court to conclude there was reliable, probative and substantial evidence to support the board's finding that Chaco is the employer. From the evidence, the board found that Chaco had *control* over the employees. If that decision was a reasonable conclusion from the evidence, we will not disturb it even if we disagree with the manner in which the evidence was weighed. Although the evidence could be viewed in a different light, the evidence reasonably permits the making of the factual findings granted above. Based upon those factual findings, the conclusion of law that Chaco, rather than Champion, is the employer naturally follows therefrom.

Having determined that Chaco can be deemed an employer as of January 28, 1986, we turn to the second issue raised by Chaco's assignment of error, namely, whether the maximum rates should be applied. The board held that the maximum rate *must* be assigned pursuant to R.C. 4141.26. In other words, the board interpreted the language in that statute as mandatory.

This court addressed that issue in *Brown Derby, Inc.* v. *Giles* (Nov. 18, 1976), No. 76AP-522, unreported, where we held that the language of R.C. 4141.26 was not exclusive. Specifically, we held:

"* * * [T]he Administrator is not precluded from exercising his discretion in light of the facts of each case. To make mandatory the maximum rate of contribution for every employer who did not timely file his quarterly report, regardless of reason and status of the employer's account and previous history, would result in unequal penalties and arbitrary treatment under the law." *Id.* at 7.

This analysis is consistent with the legislative intent of the statute, which in part is deterrence and in part protection of employees. By assigning the maximum rate to employers who willfully and deliberately fail to file a return, the legislature intended to deter others from intentionally failing to file, and at the same time, the legislature recognized the need to provide employees with a comprehensive unemployment compensation scheme. In order more fully to protect employees, it is reasonable to assign employers the maximum contribution rates where there has been an intentional failure to file. The penalty is appropriate to assure unemployment compensation coverage for the affected employees. Where there is full unemployment compensation coverage by payment of the unemployment compensation contribution under a good-faith belief that the method used by the "employer" fully complies with requirements of law and there is no threat of the employees not being covered or the fund being shorted since the requisite contributions have been paid even though by someone ultimately found not to be the employer, it is unreasonable to assign the maximum rate.

R.C. 4141.24 provides that a successor in interest to a business can make contributions at the same rate as the previous employer. While it is true that Champion did not formally transfer or otherwise reorganize its business to make Chaco the employer, in essence the board's determination did just that. It changed the employment relationship that had existed between the parties since 1938. In R.C. 4141.24, the legislature has recognized a situation where a transfer rate is appropriate. The only thing that changes is the employer of the workers. In this case, the only thing which changed as a result of the board's determination is that Chaco, not Champion, is now

deemed to be the employer. The legislature cannot draft a statute which takes into account an infinite set of facts, but the general intent of the legislature can be used in other situations. Because the change in the employment relationship resulting in an application of R.C. 4141.24 and Chaco's status change are essentially the same, even though accomplished by a different method, Chaco should be entitled to the benefit of the unemployment history, if those employees be now determined to be its employees rather than those of Champion.

In light of the principle set forth in both R.C. 4141.24 and 4141.26, the application of the maximum rate under the circumstances herein is both unreasonable and inequitable. To apply the maximum rate in this case would make no distinction between an employer who has deliberately failed to comply with the requirements of the unemployment compensation law and an employer who has made a good-faith effort to comply through having the reports filed and contributions paid by another in a good-faith belief that the latter company was the employer under a loaned-servant theory. In addition, as was noted previously, OBES first received information regarding a possible "payroll problem" involving Chaco and Champion in 1979. This factual finding indicates that OBES either accepted the arrangement or chose not to pursue it further. For six more years, OBES treated Champion, not Chaco, as the employer because, until the 1985 audit, nothing more was done. This finding further supports the decision that assessment of the maximum rate is wholly inappropriate in this case. Champion and Chaco made an effort to comply and, therefore, the assignment of the maximum rate is not appropriate. Arguably, this issue is moot since we have found, *infra*, that the administrator's assignment of error is not well-taken. In any event, it is

appropriate for this court to determine the issue to be in full compliance with App. R. 12(A). Therefore, Chaco's assignment of error is not well-taken as to the employment determination, but is well-taken with respect to the erroneous application of the maximum rate.

In her cross-assignment of error, the administrator contends that the trial court erred in refusing to permit retroactive assessment of Chaco's liability. The trial court in its decision held that "it is inequitable to determine that Chaco should be retroactively charged. * * *"

R.C. 2506.04 provides that the court may reverse the decision of an administrative agency if that decision is "arbitrary, capricious [or] unreasonable * * *." Here, the court found the decision of the board to be unreasonable and, therefore, reversed it. This finding was predicated upon the fact that Champion had paid unemployment tax on behalf of Chaco for approximately fifty years and this practice was not objected to by OBES. Instead, the OBES accepted such payments from Champion. Accordingly, both Chaco and Champion could reasonably believe they were in full compliance with the law. Charging Chaco retroactively, despite payments being made for forty-five years by Champion, is inequitable and unreasonable.

The administrator relies on R.C. 4141.23, which in part states that "[a]ssessment of contributions shall not be made after four years from the date on which such contributions became payable * * *." While this statute permits retroactive assessment up to four years, it by no means mandates such retroactive assessment unless appropriate and justified.

Although the evidence does support the finding that Chaco is an employer, it also would support a finding that Chaco is not the employer for

purposes of unemployment compensation. There is clearly a debatable factual issue as to whether Chaco or Champion is the employer, especially considering the forty-five-year practice acquiesced in by all concerned. The board placed great emphasis on the control factor, and also emphasized that Chaco was not "bound" by the wage guidelines of Champion, but instead, was free to change them. What Chaco *could* have done is not controlling. The board should not speculate as to what might happen. It is the actual relationship of the parties that is controlling. In other words, the fact that the arrangement between Chaco and Champion could be changed is not controlling. Instead, the controlling issue is the nature of that relationship and its effect.

Further evidence of this debatable factual issue is the field audit conducted in 1979 which indicated a potential problem with the payroll. OBES knew in 1979 that Champion was paying unemployment compensation on behalf of the workers of Chaco. Yet this practice was permitted to continue six more years until the 1985 audit. The status of Chaco as an employer was not clear to the OBES in 1979, or presumably, action would have been taken then. This acquiescence for six years on the part of OBES indicates that Chaco's status was very much debatable. In accepting payments for six years after the field audit in 1979, the OBES impliedly found Chaco not to be the employer.

Even if we disagree with the board's decision regarding the status of Chaco, we cannot substitute our judgment for that of the factfinder. As found by the common pleas court, the board's decision is supported by reliable, probative and substantial evidence. However, because of the debatable factual issues in this case, the retroactive assessment is not appropriate since Champion and Chaco operated in good faith in following a forty-five-year unchallenged practice. For approximately forty-five years, the OBES was satisfied to treat Champion as the employer of the people who perform services for Chaco. The record does not indicate what conditions, if any, between 1979 and 1985, caused the OBES to initiate a change in the status of Chaco and Champion with respect to the affected employees. The determination reached as a result of the 1985 audit is just that: merely a change in the status of Chaco's and Champion's relationship with the affected employees. As the court of common pleas found, such retroactive assessment is inequitable and unreasonable based upon the facts and circumstances invoked. Accordingly, the administrator's cross-assignment of error is not well-taken.

For the foregoing reasons, Chaco's assignment of error is sustained as to application of the maximum rate but is otherwise overruled, as is the administrator's cross-assignment of error. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed in part,*
*affirmed in part,*
*and cause remanded.*

STRAUSBAUGH and BRYANT, JJ., concur.