OPINION
{¶ 1} On February 20, 1996, the then Ohio Bureau of Employment Services, now known as the Ohio Department of Job and Family Services ("department"), mailed three Determinations of Employer's Liability and Contribution Rate Determinations to Fishburn Farms, Inc. ("Farms"), Marengo Auto Parts, Inc. ("Marengo") and Fishburn Services, Inc. ("Services"). The determinations indicated that Farms and Marengo were found to be "employers" under R.C. 4141.01 and were liable under the unemployment compensation laws and rules. Farms was assigned unemployment contribution rates of 3.697% for the year 1992 and 3.401% for the year 1993. Marengo was assigned unemployment contribution rates of 3% for 1992, 3% for 1993, 4% for 1994, 3.3% for 1995 and 3% for 1996. Services was determined to be the successor-in-interest to Farms as of December 31, 1992. Services was assigned varying contribution rates for the years 1991 through 1996. These rates were lower than the rates assigned to Farms and Marengo.
{¶ 2} Farms, Marengo and Services each applied to the then administrator, now known as the director of the department ("director"), for reconsideration of the determinations. On March 17, 1999, the director issued reconsidered decisions, affirming each determination. The director found that during certain periods, the employees of Marengo and Farms had been improperly reported under Services' account. For example, Farms was found to have operated as a separate legal entity until December 31, 1992, when Services became the successor-in-interest to Farms. Marengo was also found to be a separate legal entity from Services and was responsible for reporting on and after January 1, 1992.
{¶ 3} Services, Farms, and Marengo each appealed from the director's decisions on reconsideration to the Unemployment Compensation Review Commission ("commission"). A hearing as to all appeals was held before a commission hearing officer. Services, Farms and Marengo's position was that all of the individuals working for Farms and Marengo were employees of Services and that Services is and always was the "employer," for purposes of R.C. Chapter 4141, of all these employees.
{¶ 4} On February 26, 2001, the commission issued three decisions. As to Services, the issue before the commission was whether Services was the successor-in-interest to Farms (and another Fishburn entity not subject to the present appeal). The commission found that Farms was an "employer" prior to January 1, 1993 and that a merger occurring on January 1, 1993 resulted in Services being the surviving entity and, thus, the successor-in-interest to Farms. The commission affirmed the director's reconsidered decision in this regard.
{¶ 5} In the Farms and Marengo appeals, the commission stated the issue to be whether or not Farms and Marengo were employers subject to the Unemployment Compensation Act. The commission stated it was clear that Walter Fishburn, Jr., the president of all the companies at issue, was not trying to avoid payment of unemployment compensation contributions but that the method of reporting was inaccurate. The commission cited Ohio Adm. Code 4141-11-13, which prohibits one legal entity from reporting or making payments for another legal entity by what may be known as a common paymaster arrangement. The commission determined that Services was merely acting as a common paymaster for all of the Fishburn companies. The commission affirmed the director's reconsidered decisions as to Farms and Marengo.
{¶ 6} Services, Farms and Marengo appealed to the Franklin County Court of Common Pleas. The appeals were consolidated. On February 11, 2002, the common pleas court rendered a decision and judgment entry. The common pleas court stated that the issues presented were whether the three entities should be considered one for the purposes of calculating the contribution rate (i.e., was Services the only "employer"), and if not, whether the court could modify the rates assigned. The common pleas court determined that Farms and Marengo were each separate "employers," thus, affirming the commission's decision in this regard. However, the common pleas court found that Farms and Marengo were entitled to the lower rate enjoyed by Services and, therefore, the common pleas court ordered the director to assign Farms and Services the contribution rates previously enjoyed by Services.
{¶ 7} The director (hereinafter "appellant") has appealed to this court, assigning the following as error:
{¶ 8} "THE FRANKLIN COUNTY COURT OF COMMON PLEAS ERRED IN HOLDING THAT FARMS AND MARENGO ARE ENTITLED TO THE SAME EXPERIENCE CONTRIBUTION RATES ASSIGNED TO FISHBURN SERVICES, AS ODJFS' ORDER, ESTABLISHING STANDARD NEW BUSINESS CONTRIBUTION RATES FOR FARMS AND MARENGO, IS SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE AND IS IN ACCORDANCE WITH LAW."
{¶ 9} The standard of review for appeals from the commission is found in R.C. 4141.26, which states, in pertinent part:
{¶ 10} "(D)(2) * * * The [common pleas] court may affirm the determination or order complained of in the appeal if it finds, upon consideration of the entire record, that the determination or order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the determination or order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. The judgment of the court shall be final and conclusive unless reversed, vacated or modified on appeal. An appeal may be taken from the decision of the court of common pleas of Franklin county."
{¶ 11} As for this court's standard of review, an appellate court's role in reviewing the order of an administrative agency is more limited than that of a common pleas court. This court does not examine the evidence. Childs v. Oil Gas Comm. (Mar. 28, 2000), Franklin App. No. 99AP-626, citing Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 260-261. This court determines only if the common pleas court abused its discretion. Id. However, this court's review of questions of law is plenary. Childs, citing Univ. Hosp., Cincinnati College of Medicine v. State Emp. Relations Bd. (1992),63 Ohio St.3d 339.
{¶ 12} As indicated above, the commission found that Farms and Marengo (hereinafter collectively referred to as "appellees") were employers under R.C.4141.01 and were liable under the unemployment compensation statutes and rules. The common pleas court affirmed this determination but modified the commission's decision with regard to the contribution rates assigned. The common pleas court concluded that appellees should have been assigned the contribution rates "previously enjoyed" by Services. Appellant contends it was error to order the assignment of experience rates to appellees, who were deemed to be new employers, and who were properly assigned the standard new business contribution rates by the director. Appellant's argument is based, in part, on the theory that only a successor-in-interest may be assigned experience rates.
{¶ 13} We note first that appellees assert the common pleas court erred in concluding they were employers and in not finding that Services was the "employer" for all individuals working for the various Fishburn entities. However, appellees did not file a cross-appeal here. Appellees assert that such was unnecessary because they do not seek to change the common pleas court's judgment or order. Rather, appellees argue that their argument is merely an alternative basis under which the common pleas court could have reversed the commission's decision. Appellees' assertions are not well-taken.
{¶ 14} The crux of the commission's decision was that appellees were employers. This determination was, in essence, what was appealed by appellees to the common pleas court. The common pleas court affirmed this determination, but it also held that the rates assigned appellees should have been lower. Hence, while appellees may have "prevailed" on the rate issue, they did not prevail on the main issue, i.e., were they employers subject to the unemployment compensation laws. In arguing on appeal that the common pleas court erred in upholding the commission's determination that they are employers, appellees seek to change the common pleas court's judgment. Appellees should have filed a cross-appeal if they wished to challenge this part of the common pleas court's judgment. Appellees having failed to do so, this court may not address that part of the common pleas court's judgment which affirmed the commission's decision that appellees were employers.[1]
{¶ 15} We now turn to the sole issue before us — whether the common pleas court could properly order the director to assign appellees the same contribution rates assigned to Services. For the reasons that follow, we find the common pleas court erred in ordering the director to do so.
{¶ 16} In finding that appellees should have been assigned the same contribution rates as Services, the common pleas court reasoned that appellees' failure to report as separate employers was not willful or deliberate. The common pleas court's authority for such rationale was this court's decision in Chaco Credit Union, Inc. v. Ohio Bur. of Emp. Serv. (1988),54 Ohio App.3d 110. In Chaco, this court held, in essence, that it was unreasonable to assign, pursuant to (former) R.C. 4141.26, the maximum contribution rate upon an employer who had not willfully and deliberately failed to file a report as required in (former) R.C.4141.26.
{¶ 17} The facts in Chaco are somewhat similar to the facts here. Chaco was a credit union that had been established for the use of the employees of Champion International ("Champion"). Champion contributed the unemployment tax on behalf of Chaco's employees, and Champion had always reported Chaco's employees as employees of Champion. This court noted that (former) R.C. 4141.24 allowed a successor-in-interest to take on the contribution rate of the previous business and that while there was no formal transfer in the case before it, the practical results were the same. Id. at 114. However, the main issue in Chaco was whether the language in then R.C. 4141.26 was mandatory.
{¶ 18} At the relevant time in Chaco, R.C. 4141.26
stated that if an employer did not furnish the Ohio Bureau of Employment Services with the necessary wage information by a certain date, the maximum contribution rate would be assigned. Under the former version of R.C. 4141.26, the maximum rate was binding unless the required information was submitted by the thirtieth day following the issuance of the maximum rate notice or unless the then administrator reconsidered such maximum rate upon a request for such by the employer within thirty days of the mailing of the rate notice. This court stated that the language of (former) R.C. 4141.26
was not mandatory and that the administrator was not precluded from exercising discretion in light of the facts of each case. Id. at 114, quoting Brown Derby, Inc. v. Giles (Nov. 18, 1976), Franklin App. No. 76AP-522. Accordingly, this court held that imposition of the maximum rate under the circumstances was unreasonable and inequitable. Id. at 115. For the following reasons, we find that Chaco is inapplicable to the issue presented in the case at bar.
{¶ 19} The case before us does not involve application of R.C. 4141.26 as such statute was applied in Chaco. Even if R.C. 4141.26 was implicated here, the rationale in Chaco is not controlling because R.C. 4141.26
has been amended numerous times since Chaco. Arguably, the amendments lessened the potentially broad effect the Chaco decision would have on the director's authority as to whether or not to impose a maximum contribution rate when wage information is not timely submitted. Notwithstanding this, however, the case before us does not involve an application of R.C. 4141.26. Indeed, the record before us shows that appellees were not assigned "penalty rates." Rather, appellees were presumably assigned rates pursuant to R.C. 4141.25, which at the time of the administrator's February 26, 1996 contribution rate determination stated:
{¶ 20} "(B) An employer who first becomes subject to this chapter as a contributory employer shall pay the average contribution rate computed for the industry in which the employer is engaged, or a rate of three per cent, whichever is greater, until there have been four consecutive calendar quarters, ending on the thirtieth day of June prior to the computation date throughout which the employer's account was chargeable with benefits. Upon expiration of this qualifying period, the rate shall then be computed in accordance with division (C) of this section. The `average contribution rate' for the industry as used in this division means the most recent annual average rate reported by the bureau of employment services contained in report RS 203.2.
{¶ 21} "(C) The administrator of the bureau of employment services shall determine as of each computation date the contribution rate of each employer for the next succeeding contribution period. Once a rate of contribution has been established under this section for a contribution period, except as provided in division (D) of section 4141.26 of the Revised Code, that rate shall remain effective throughout such contribution period. * * *."
{¶ 22} Without any evidence to the contrary, we presume the director and the commission followed the statutory framework in (former) R.C. 4141.25 and any other applicable law or rule in computing appellees' contribution rates for the relevant periods. Appellees have not persuaded this court that the director or commission should have assigned contribution rates other than the rates assigned pursuant to the applicable statutes/rules. The common pleas court erred as a matter of law in ordering the director to assign the contribution rates previously assigned to Services. Accordingly, appellant's assignment of error is sustained.
{¶ 23} In summary, appellant's assignment of error is sustained. That portion of the common pleas court's judgment affirming the commission's decision that appellees were employers is affirmed. That portion of the common pleas court's judgment which modified the commission's decision and ordered the director to assign different contribution rates is reversed. This cause is remanded to the Franklin County Court of Common Pleas with instructions to affirm the commission's February 26, 2001 decisions in their entireties.
Judgment affirmed in part and reversed in part, and cause remanded with instructions.
BRYANT and PETREE, JJ., concur.
[1] Appellees also state in a footnote that the commission made a "typographical error" in its decision by assigning a contribution rate to Farms for the year 1993, despite the fact that the commission found that Farms ceased to exist after December 31, 1992. (See appellees' brief at 3.) Again, appellees did not appeal as to this alleged error. Indeed, they only make reference to it in a footnote. Therefore, this court will not address it.